**NORTH MISSISSIPPI SAVINGS & LOAN ASSOCIATION and New North Mississippi Federal Savings & Loan Association, Plaintiffs-Appellees,**

v.

**Joseph M. HUDSPETH, Defendant-Appellant.**

**No. 84–4290.**

United States Court of Appeals, Fifth Circuit.

May 23, 1985.

---

Holcomb, Dunbar, Connell, Chaffin & Willard, Jack F. Dunbar, Wylene W. Dunbar, Oxford, Miss., for defendant-appellant.

Watkins & Eager, George R. Fair, P.N. Harkins, III, William F. Goodman, Jr., Jackson, Miss., for plaintiffs-appellees.

Paul W. Grace, Washington, D.C., for Federal Sav. & Loan.

Before THORNBERRY, REAVLEY, and HIGGINBOTHAM, Circuit Judges.

## REVISED OPINION

PATRICK E. HIGGINBOTHAM, Circuit Judge:

A state-court contract dispute between North Mississippi Savings & Loan Association, "Old North," and Joseph M. Hudspeth took on new dimensions when the Federal Savings & Loan Insurance Corporation placed Old North in receivership and transferred its assets to a newly-created institution, New North Mississippi Federal Savings & Loan Association. After Hudspeth amended his counterclaim against Old North to name New North as a defendant, New North and the FSLIC, as receiver of Old North, removed to federal court and successfully moved to dismiss for lack of subject-matter jurisdiction. Hudspeth challenges both the removal and the dismissal. Because the presence of New North and the FSLIC made this action removable under 12 U.S.C. § 1730(k)(1), and because Hudspeth's claims can be judicially reviewed only after their presentation to the Federal Home Loan Bank Board, we affirm.

### I

Until 1977, Joseph Hudspeth was the president of Old North, a state-chartered institution not insured by the Federal Savings & Loan Insurance Corporation. In 1977, the Mississippi legislature passed a statute requiring all state thrift institutions to obtain FSLIC insurance. The Federal Home Loan Bank Board refused to authorize insurance for Old North unless Hudspeth was replaced as president. When Hudspeth stepped down, Old North began paying him a regular monthly amount under what Hudspeth claims was a deferred compensation agreement.

In 1982, Old North filed this action in Mississippi chancery court for a declaration that its agreement with Hudspeth either did not exist or was terminable. Hudspeth counterclaimed for specific performance or damages for breach of contract. Old North continued to make the monthly payments until April of 1983.

On April 11, 1983, the State of Mississippi put Old North into state receivership and appointed the FSLIC as state receiver. On the same day, the FHLBB determined that Old North was insolvent and "federalized" the receivership by naming the FSLIC as the sole receiver of Old North under 12 U.S.C. § 1729(c)(1)(B). The FSLIC then formed a new federally-chartered institution, New North Mississippi Federal Savings & Loan, and appointed a federal conservator to run New North. Old North transferred to New North essentially all of its assets[1] and all liabilities except Old North's liabilities to its stockholders and any obligation owed by Old North under a compensation agreement such as Hudspeth's. The FSLIC, as receiver of Old North, then terminated all such agreements and stopped the payments to Hudspeth.

The FSLIC, on behalf of Old North, unsuccessfully moved in state court to dismiss the counterclaim. Hudspeth then filed an amended counterclaim joining New North as a party, alleging that New North was a transferee in interest under Mississippi law, and seeking actual and punitive damages from Old North and New North.

---

1. New North agreed to reconvey to the FSLIC as receiver, on the FSLIC's request, any potential claim for malfeasance against Old North's officers or employees.

The FSLIC and New North removed the action to federal court and moved to dismiss. Hudspeth moved to remand to state court. In a thoughtful opinion, the court denied the motion to remand and granted the motion to dismiss the counterclaim.

## II

The district court upheld the removal to federal court primarily on the authority of 12 U.S.C. § 1730(k)(1), which states:

Notwithstanding any other provision of law, (A) the Corporation [the FSLIC] shall be deemed to be an agency of the United States within the meaning of section 451 of Title 28; (B) any civil action, suit, or proceeding to which the Corporation shall be a party shall be deemed to arise under the laws of the United States, and the United States district courts shall have original jurisdiction thereof, without regard to the amount in controversy; and (C) the Corporation may, without bond or security, remove any such action, suit, or proceeding from a State court to the United States district court for the district and division embracing the place where the same is pending by following any procedure for removal now or hereafter in effect: *Provided,* That any action, suit, or proceeding to which the Corporation is a party in its capacity as conservator, receiver, or other legal custodian of an insured State-chartered institution and which involves only the rights or obligations of investors, creditors, stockholders, and such institution under State law shall not be deemed to arise under the laws of the United States. No attachment or execution shall be issued against the Corporation or its property before final judgment in any action, suit, or proceeding in any court of any State or of the United States or any territory, or any other court.

Hudspeth argues that the FSLIC is not a "party" to this suit under subsection (B) because it has never been formally joined. Even if the FSLIC is a party, Hudspeth contends that this action "involves only the rights or obligations of investors, creditors, stockholders," and Old North under Mississippi law, and that the statute therefore precludes federal jurisdiction.

■ In *Farina v. Mission Investment Trust,* 615 F.2d 1068, 1074–75 & n. 19 (5th Cir.1980), this court affirmed the existence of federal jurisdiction under 12 U.S.C. § 1819(4), the FDIC parallel to § 1730(k)(1), based on the presence of the FDIC as receiver or successor in interest for one defendant, a failed commercial bank. We stated that the formal intervention or joinder of the FDIC was not necessary, and that such a requirement "would render federal pleadings excessively technical" in contradiction of Federal Rules of Civil Procedure 8(e)(1) and 8(f). 615 F.2d at 1074. The rationale of *Farina* is equally applicable here. Even though the FSLIC has not been formally joined, it is a party in the contemplation of § 1730(k)(1).

■ The § 1730(k)(1) proviso cited by Hudspeth excepts from the statute's general grant of federal jurisdiction actions where two conditions are both present: (1) only the rights or obligations of investors, creditors, stockholders, and a State-chartered institution in FSLIC receivership or conservatorship are at issue, and (2) only questions of state law are involved. Hudspeth, though, sued and demanded damages from New North, a federally-chartered institution that was neither an investor, creditor, nor stockholder of Old North. Hudspeth's action asked the court to determine New North's rights and obligations, and thus was not governed by the proviso. *See American National Bank v. FDIC,* 710 F.2d 1528, 1533 n. 5 (11th Cir.1983) (parallel proviso, 12 U.S.C. § 1819(4), inapplicable when third party's rights are in-

volved).  Removal was therefore under § 1730(k)(1)(B) and (C).

### III

The district court construed Hudspeth's counterclaim as a challenge to the validity of the FSLIC's termination of the compensation contract and its transfer of Old North's assets and liabilities to New North. The court then relied on 12 U.S.C. § 1464(d)(6)(C):

> Except as otherwise provided in this subsection, no court may . . ., except at the instance of the [FHLBB], restrain or affect the exercise of powers or functions of a conservator or receiver.

and 12 U.S.C. § 1729(d):

> In connection with the liquidation of insured institutions, the [FSLIC] shall have power . . . to settle, compromise, or release claims in favor of or against the insured institutions, and to do all other things that may be necessary in connection therewith, subject only to the regulation of the Federal Home Loan Bank Board. . . .

in holding that "original jurisdiction over the conduct of FSLIC . . . lies with FHLBB," rather than any court.[2]  Stating that Hudspeth's sole remedy was a petition to the FHLBB, with judicial review then available under the Administrative Procedure Act, the court dismissed the counterclaim for lack of subject matter jurisdiction.

Hudspeth's counterclaim seeks a declaratory judgment that the contract remains valid and binding, as well as exemplary and mental-anguish damages based on the allegedly wrongful termination of the contract.  Alternatively, it avers that Hudspeth has "substantially completed his performance under the aforesaid contract and has a valid credit claim,"[3] and demands a money judgment for the present value of the contract at the time payment stopped. In addition, Hudspeth seeks to impose liability for this claim on New North as Old North's "transferee in interest" under Mississippi law.  *See West Center Apartments Ltd. v. Keyes,* 371 So.2d 854 (Miss. 1979).

■  In explaining the Bank Protection Act of 1968, which made § 1464(d)(6)(C) applicable in receiverships of state thrift institutions, the Senate confirmed that the FSLIC's authority "[i]n carrying out its receivership responsibilities . . . would be subject only to the regulation of the Federal Home Loan Bank Board. . . ."  S.Rep. No. 1263, 90th Cong., 2d Sess. 10, *reprinted in* 1968 U.S.Code Cong. & Admin.News 2530, 2539.  Congress wanted the FSLIC to be able to act quickly and decisively in reorganizing, operating, or dissolving a failed institution, and intended that the FSLIC's ability to accomplish these goals not be interfered with by other judicial or regulatory authorities.

■  The statutory scheme thus routes to the administrative process Hudspeth's assertion that FHLBB regulations did not authorize the FSLIC here to set aside an otherwise-enforceable contract.[4]  That act

---

**2.**  Section 1464(d)(6)(C), passed as part of the Financial Institutions Supervisory Act of 1966, originally applied only to receiverships of federally-chartered institutions.  Section 1729(d) was part of the Bank Protection Act of 1968, which empowered the FHLBB to appoint the FSLIC as federal receiver of state-chartered thrifts.  The 1968 Act also made § 1464(d) applicable in such "federalized" receiverships.  *See* 12 U.S.C. § 1729(c)(3)(A).

**3.**  The district court dismissed the counterclaim on the pleadings and we accept Hudspeth's allegation of substantial performance as true for purposes of this appeal.  *Williamson v. Tucker,* 645 F.2d 404, 412 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981).

**4.**  Hudspeth argues that although 12 C.F.R. § 569a.6(c)(3) gives the FSLIC, as receiver of a nonfederal institution, the power to "[r]eject or

was unquestionably an exercise of the FSLIC's powers as a receiver, analogous to a trustee's rejection of a contract in a bankruptcy proceeding. *See* 11 U.S.C. § 365(a).

Similarly, Hudspeth's attempt to charge New North with Old North's debt, despite the FSLIC's failure to transfer that liability, crosses the line drawn by the relevant statutes. The FSLIC, in working out the terms of the transfer between Old North and New North, essentially acted as a liquidator. It allocated the demands of competing claimants to Old North's limited assets by, in effect, relegating two classes of claimants—Old North stockholders, and Hudspeth—to second-priority status, leaving for satisfaction of their claims only the right of Old North to reacquire from New North any claims for officer malfeasance.

■ Once again, it is not our job to decide whether the FSLIC could parcel out Old North's assets in this particular manner. The FSLIC has the authority to liquidate failed institutions. 12 U.S.C. §§ 1729(a), (b)(1)(A)(v), (c)(3)(B), and (d). Indeed, the motivating force behind the passage of the Bank Protection Act of 1968 was to permit the FSLIC to intervene in state receiverships not geared toward liquidation, so that it could order liquidation and recoup its insurance payments to savers. *See* S.Rep. No. 1263, 90th Cong., 2d Sess. 8, 11, *reprinted in* 1968 U.S.Code Cong. & Admin.News 2530, 2537, 2540. Inherent in the power to liquidate is the right to "[fix] the time and manner of distribution" of assets. *Morris v. Jones*, 329 U.S. 545, 549, 67 S.Ct. 451, 454, 91 L.Ed. 488 (1947). Even if otherwise correct under Mississippi law, any court ruling that New

North bears a liability not assigned it by the FSLIC would modify the FSLIC's distribution of assets, and would "restrain or affect" the FSLIC's powers as a receiver in violation of 12 U.S.C. § 1464(d)(6)(C).

■ Finally, Hudspeth argues that at the very least, §§ 1464(d)(6)(C) and § 1729(d) are no bar to a mere judicial adjudication that Old North owed a debt to Hudspeth. It cites *Riehle v. Margolies*, 279 U.S. 218, 49 S.Ct. 310, 73 L.Ed. 669 (1929), for the proposition that the adjudication of claims against a debtor, as opposed to the allocation of assets to satisfy those claims, is not a receivership function, and that judicial resolution of claims therefore does not "restrain or affect" the receiver's conduct. As the FSLIC points out, though, resolution of even the facial merits of claims outside of the statutory reorganization process would delay the receivership function of distribution of assets: the FSLIC would not be able to determine how much to pay other claimants until the termination of the parallel litigation. Given the overriding Congressional purpose of expediting and facilitating the FSLIC's task as receiver, such a delay is a "restraint" within the scope of the statute.

■ Our conclusion is fortified by the existence of FHLBB regulations setting forth procedures for FSLIC payment of creditor claims. Under these regulations, the FSLIC gives notice to creditors to present their claims, and then may disallow claims "not proven to its satisfaction." Any disallowed claims are submitted to the FHLBB for review. 12 C.F.R. §§ 569a.8, 549.4.[5] This administrative process serves

---

repudiate any lease or contract which it considers burdensome," § 569a.13 makes § 569a.6(c)(3) inapplicable to purchase and assumption transactions. The FSLIC replies that the FHLBB resolution appointing the FSLIC as Old North's receiver expressly granted the FSLIC the powers of a receiver of a federal association, which contain no restriction corre-

sponding to § 569a.13. *See* 12 C.F.R. §§ 549.3, 548.2. We intimate no view on this issue.

**5.** As with the regulations concerning rejection of contracts, n. 4, *supra*, whether the FSLIC followed its claims regulations in Hudspeth's case is irrelevant. The regulations, observed or not, are evidence that adjudication *is* a receivership function in FSLIC receiverships.

to hasten the resolution of the receivership proceedings, in keeping with the Congressional purpose. Furthermore, the regulations reflect the view of the FHLBB, the enforcing agency for the relevant banking statutes, that the FSLIC is empowered to decide claims as part of its receivership function. The FHLBB's opinion is entitled to our deference. *Mattox v. FTC*, 752 F.2d 116, 123–24 (5th Cir.1985); *Chevron U.S.A. v. Natural Resources Defense Council*, —— U.S. ——, 104 S.Ct. 2778, 2782–83, 81 L.Ed.2d 694 (1984).

## IV

■ In short, all of Hudspeth's claims are switched to the administrative track by § 1464(d)(6)(C). Hudspeth can challenge the FSLIC's actions before the FHLBB, and, if unsatisfied, can seek judicial review under the APA. *See First Savings & Loan Ass'n v. First Federal Savings & Loan Ass'n*, 531 F.Supp. 251, 254 (D.Haw. 1981). Because the statute prevents him from going forward in any court before seeking FHLBB review, though, the district court correctly dismissed his counterclaim.

AFFIRMED.